FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 1 0 2019

JAMES W. McCORMACK CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 4:19CR 00031 DPM |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 666(a)(2) |
| | ) | 18 U.S.C. § 1343 |
| GILBERT R. BAKER | ) | 18 U.S.C. § 1346 |

**INDICTMENT**

THE GRAND JURY CHARGES THAT:

**GENERAL ALLEGATIONS**

At all times material to this Indictment:

1.     Michael A. Maggio ("Maggio") was a circuit judge for the Twentieth Judicial District, a part of the judicial branch of the State of Arkansas.   During his tenure as a circuit judge, Maggio was an agent of the State of Arkansas and the Twentieth Judicial District, and he presided over criminal, civil, domestic relations, and probate cases filed in Faulkner, Van Buren, and Searcy counties.   On or about June 27, 2013, Maggio announced his candidacy for the Arkansas Court of Appeals for the nonpartisan general election to be held on May 20, 2014.   Maggio formally withdrew his candidacy on or about March 6, 2014.

2.     Defendant GILBERT R. BAKER ("BAKER") was a lobbyist and political fundraiser.   BAKER assisted with Maggio's campaign to be elected to the Arkansas Court of Appeals.   Between in or about January 2013 and in or about April 2014, BAKER was the President, Secretary, and Treasurer of LRM Consulting, a consulting and lobbying firm.

Between in or about January 2013 and April 2014, BAKER was also the Executive Assistant to the President of a local university with responsibilities including lobbying and fundraising.

3.     At the time of Maggio's campaign to be elected to the Arkansas Court of Appeals, Maggio and BAKER understood that: (a) judicial candidates in Arkansas were prohibited from soliciting or accepting contributions for a candidate's current campaign more than 180 days before the applicable election; (b) judicial candidates in Arkansas could not accept contributions for the nonpartisan judicial election (held on May 20, 2014) until on or about November 21, 2013; (c) judicial candidates in Arkansas were prohibited from personally soliciting campaign contributions or personally accepting campaign contributions, but could establish campaign committees to receive contributions; (d) to reduce potential disqualification and to avoid the appearance of impropriety, judicial candidates in Arkansas should, as much as possible, not be aware of those who have contributed to their campaign; and (e) no contribution may be made to or accepted by a judicial candidate unless the contribution was made in the name by which the person providing the funds for the contribution is identified for legal purposes, meaning straw contributions were prohibited.

4.     Individual A was a stockholder in numerous nursing homes located in Arkansas.     Individual A owned Company A, a nursing home and rehabilitation center located in Faulkner County.

-2-

5.      In or about February 2012, Maggio was assigned to preside over a civil lawsuit filed in Faulkner County Circuit Court (the "civil lawsuit").    The plaintiff in that matter, the estate of a decedent, had filed a complaint alleging that Company A, Individual A, and others had neglected and mistreated the decedent while she was in Company A's care.    The plaintiff's complaint sought compensatory damages, among other forms of relief.    On or about May 8, 2013, the plaintiff's civil lawsuit proceeded to trial against Company A.    On or about May 16, 2013, at approximately 5:50 p.m., the jury returned a verdict in the civil lawsuit in the plaintiff's favor, awarding damages against Company A in the amount of $5.2 million.    On or about June 17, 2013, at approximately 10:05 a.m., attorneys representing Company A filed a motion for a new trial or remittitur, seeking, among other things, to reduce the amount of damages awarded to the plaintiff in the civil lawsuit.    On or about July 8, 2013, at approximately 1:20 p.m., Maggio held a hearing on Company A's pending post-verdict motions in the civil lawsuit, including the motion for remittitur. On or about July 10, 2013, Maggio signed an order granting Company A's motion for remittitur, reducing the judgment against Company A from $5.2 million to $1 million.

6.      Individual B was a lawyer in Arkansas.

7.      Individual C was a lobbyist and consultant in Arkansas.

8.      Individual D was a lobbyist and consultant in Arkansas who also served as the Treasurer and Principal of Company B, a non-profit trade association that supported

tort reform.   BAKER provided fundraising assistance to Company B.   Individual A provided substantial financial assistance to Company B through BAKER.

9.     Individual E was a candidate for judicial office in the May 20, 2014 nonpartisan judicial election.

10.     Individual F was a political consultant.

11.     In 2013, the State of Arkansas, Twentieth Judicial District received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance.

## COUNT ONE
### Conspiracy
### (Violation of 18 U.S.C. § 371)

12.     The introductory allegations set forth in paragraphs 1 through 11 are realleged and incorporated by reference as though fully set forth herein.

### The Conspiracy

13.     From in or about May 2013, continuing through in or about June 2014, in the Eastern District of Arkansas and elsewhere, the defendant,

GILBERT R. BAKER,

together with Michael A. Maggio and at least one other person, did knowingly and unlawfully conspire, confederate, and agree together and with each other:

a.     to corruptly give, offer, and agree to give, anything of value to any

-4-

person, intending to influence and reward Maggio, an agent of the State of Arkansas, Twentieth Judicial District, a part of the judicial branch of the State of Arkansas, in connection with a business, transaction, or series of transactions of $5,000 or more of the State of Arkansas, Twentieth Judicial District, a part of the judicial branch of the State of Arkansas, in violation of 18 U.S.C. § 666(a)(2); and

        b.      to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of the State of Arkansas of their right to the honest services of Maggio, a circuit judge for the State of Arkansas, Twentieth Judicial District, through bribery, in violation of 18 U.S.C. §§ 1343 and 1346.

## Purpose of the Conspiracy

14.     It was a purpose of the conspiracy for BAKER and Maggio to enrich themselves, LRM Consulting, and Company A, and to advance the business interests of LRM Consulting and Company A, by providing campaign contributions to Maggio from Individual A in exchange for Maggio agreeing to act in his official capacity to benefit Individual A and Company A in the civil lawsuit.

15.     It was a purpose of the conspiracy to hide, conceal, and cover up the nature and scope of BAKER's dealings with Maggio and Individual A, including the true source and nature of the campaign contributions.

## Manner and Means

16.     The conspiracy was carried out through the following manner and means,

among others:

     a.     BAKER solicited campaign contributions on behalf of Maggio from Individual A.

     b.     Individual A provided campaign contributions to Maggio through the use of BAKER, who served as an intermediary.

     c.     In return for the campaign contributions, Maggio acted in his official capacity to benefit Individual A and Company A in the civil lawsuit involving Company A in which Maggio was the presiding judge.

     d.     BAKER, assisted by Individual B, hid, concealed, and covered up the true source of these contributions through the use of Political Action Committees (PACs);

     e.     BAKER, assisted by Individuals B, C, and D, hid, concealed, and covered up the true source of these contributions through the use of straw donors and false invoices.

## Overt Acts

17.     In furtherance of the conspiracy, and to effect its objects and purposes, BAKER and Maggio committed the following overt acts, among others, in the Eastern District of Arkansas, and elsewhere:

18.     In or about early 2013, BAKER agreed to be a fundraiser for Maggio's campaign for the Court of Appeals.

19.     In or about early May 2013, BAKER met with Maggio and Individual F to

-6-

discuss Maggio's campaign for the Arkansas Court of Appeals.   During the meeting, Individual F told Maggio and BAKER that Maggio would need to raise approximately $100,000 to $150,000 to run a successful campaign.   BAKER told Maggio that Maggio would be responsible for smaller donations from friends and family, totaling approximately $25,000 to $50,000, and BAKER would be responsible for covering the difference by raising funds from "industry types" including, among other entities, nursing homes.

20.     On or about May 16, 2013, at approximately 10:33 a.m., BAKER sent a text message to Maggio, stating, "I have a LR lunch today with the nursing home folks.   The topic will be judicial races.   You are at the top of the list."

21.     On or about May 16, 2013, at the lunch, which occurred at a restaurant in Little Rock, BAKER approached Individual A and asked Individual A to provide campaign support to Maggio.   Individual A agreed to provide campaign support.

22.     On or about May 16, 2013, approximately a half an hour after the jury's verdict in the civil lawsuit, BAKER and Maggio engaged in the following communications regarding the verdict:

| | | |
|---|---|---|
| 6:22 p.m. | Maggio to BAKER | text |
| 6:33 p.m. | Individual A to BAKER | 6 minutes 49 seconds |
| 6:40 p.m. | BAKER to Maggio | text |
| 6:44 p.m. | Maggio to BAKER | text |

23.     On or about May 17, 2013, the day after the verdict in the civil lawsuit, Individual A and BAKER engaged in the following communications regarding the verdict:

| | | |
|---|---|---|
| 8:55 a.m. | BAKER to Individual A | 8 minutes 3 seconds |

| 9:09 a.m. | Individual A to BAKER | 2 minutes 22 seconds |
| 11:09 a.m. | Individual A to BAKER | No answer |
| 11:09 a.m. | Individual A to BAKER | 23 seconds |
| 11:59 a.m. | BAKER to Individual A | 6 minutes 11 seconds |

24.    In or about late May or early June 2013, BAKER met with Individual B and asked Individual B several questions about PACs, including whether an individual could contribute to more than one PAC, and if there was a limit on how many PACs could contribute to a specific candidate.

25.    On or about June 10, 2013, BAKER sent an e-mail to Individual B, stating in part:   "I do need the scoop on forming ark.state PACs.   Just a template so we could form as many as 10.   Thanks.   Gb."

26.    In or about June 2013, BAKER and Individual A met at a restaurant in Russellville to discuss financial support for Maggio and others.   BAKER agreed to send Individual A a fax containing BAKER's specific financial requests.

27.    On or about June 17, 2013, BAKER and Maggio engaged in the following communications:

| 10:29 a.m. | Individual A to BAKER | 5 seconds |
| 5:51 p.m. | Individual A to BAKER | 3 seconds |
| 6:23 p.m. | BAKER to Individual A | 4 minutes 39 seconds |
| 9:26 p.m. | BAKER to Maggio | text |
| 9:27 p.m. | Maggio to BAKER | text |
| 9:28 p.m. | Maggio to BAKER | text |
| 9:42 p.m. | Maggio to BAKER | text |
| 9:45 p.m. | BAKER to Maggio | text |
| 9:47 p.m. | Maggio to BAKER | text |
| 9:49 p.m. | BAKER to Maggio | text |
| 9:49 p.m. | Maggio to BAKER | text |

28.     On or about June 29, 2013, at approximately 8:15 a.m., BAKER sent Maggio a text message stating, "Well. Your first 50k is on the way," which Maggio understood to include support from Individual A, and "When can we take the money?" Maggio replied, "THANK YOU!!!!!! Unfortunately not. Till late November."

29.     In or about late June or early July 2013, BAKER communicated to Maggio that Individual A was watching the civil lawsuit and would appreciate Maggio making a favorable decision.

30.     In or about late June or early July 2013, BAKER reminded Maggio to act in his official capacity to benefit Individual A in exchange for Individual A providing financial support for Maggio's campaign by communicating to Maggio, "win lose or draw" Individual A would support Maggio.

31.     On or about July 2, 2013, BAKER sent an e-mail to Individual B, which stated in part:   "Please get me 3 or 4 PAC names.   Thanks."

32.     Between on or about July 2, 2013 and on or about July 8, 2013, BAKER and Individual B had a telephone conversation in which they discussed and agreed upon names for the eight PACs that BAKER asked Individual B to create, including Citizens for Information Technology (CIT) PAC, Conservative Persons In (CPI) PAC, D. Bruce Hawkins 2 (DBH 2) PAC, Go Good Government (GGG) PAC, Judicial Reform PAC, Red Arkansas PAC, Taxpayers for Change PAC, and Thomas Group In (TGI) PAC.   BAKER suggested most of the names.

33.     Between on or about July 2, 2013 and on or about July 8, 2013, during the same telephone conversation, BAKER instructed Individual B, and Individual B agreed that: (a) Individual B would create the PACs for a flat fee of $500 per PAC, which would be paid from the PAC funds after the funds were received; (2) Individual B would serve as the registered agent and administrator for each PAC; and (3) BAKER would handle fundraising for the PACs and would provide directions to Individual B as to when and to whom contributions from the PACs should be made.

34.     Sometime between on or about July 2, 2013 and on or about July 8, 2013, BAKER sent a facsimile to Individual A, requesting, among other things, that Individual A provide $3,000 in campaign contributions to ten PACs, including eight PACs BAKER created with Individual B's assistance to support Maggio's campaign.

35.     On or about July 8, 2013, BAKER and Maggio engaged in the following text communications:

| 9:32 a.m. | BAKER to Maggio |
| 9:32 a.m. | BAKER to Maggio |
| 9:48 a.m. | Maggio to BAKER |
| 9:49 a.m. | BAKER to Maggio |

36.     Pursuant to BAKER's instructions, on or about July 8, 2013, Individual A wrote, or caused an employee to write, ten $3,000 checks, one to each of the ten PAC names provided by BAKER.

37.     Pursuant to BAKER's instructions, on or about July 8, 2013, Individual A sent, or caused an employee to send, the ten $3,000 PAC checks to BAKER's home address

by Federal Express.   The Federal Express package also included two $25,000 checks for Company B, a $100,000 charitable contribution to the university for which BAKER worked, and $48,000 in checks for Individual E's campaign.   In total, Individual A provided $228,000 in checks to BAKER.

38.   On or about July 9, 2013, BAKER received the Federal Express package described above at his home address at approximately 10:31 a.m.

39.   On or about July 9, 2013, BAKER and Maggio engaged in the following communications:

| | | |
|---|---|---|
| 3:30 p.m. | BAKER to Maggio | 6 seconds |
| 3:31 p.m. | BAKER to Maggio | 1 minute 22 seconds |
| 4:05 p.m. | BAKER to Individual A | 8 minutes 27 seconds |
| 5:24 p.m. | BAKER to Individual E | text |
| 5:27 p.m. | Individual E to BAKER | text |

40.   On or about July 9, 2013, at approximately 5:16 p.m., BAKER sent a text message to Individual B, which stated:   "Call me.   I've got these PAC checks." Individual B responded, "Ok.   I will first thing in the morning."

41.   On or about July 10, 2013, Maggio signed an order denying Company A's motion for a new trial in the civil lawsuit, but granting Company A's motion for remittitur. Maggio reduced the judgment against Company A from $5.2 million to $1 million.

42.   On or about July 19, 2013, BAKER delivered, or caused to be delivered, to Individual B's law firm, an envelope containing eight of the PAC checks from Individual A intended for Maggio's campaign and a handwritten list (in BAKER's handwriting)

identifying officers for each PAC.

43.     On or about July 22, 2013, after receiving a text from Individual B that read, "PO Box's will be $960 total for all PAC's.    if you can advance those fees that would be great.    I can have these set up as soon as I have the check.    I have po box forms and have apt with bank.    We are ready to roll", BAKER responded to Individual B's text message, stating, "I'm out of town.    Just texted [BAKER's colleague] to bring u a 1k check for boxes".

44.     On or about July 23, 2013, BAKER caused Individual B to set up post office boxes for the PACs.

45.     On or about July 25, 2013, after receiving an email from Individual B, BAKER sent an e-mail to Individual B with false and incorrect addresses and telephone numbers for the individuals included on BAKER's handwritten list of PAC officers. BAKER also promised to send addresses for two individuals later.

46.     On or about July 30, 2013, BAKER agreed to deliver employment information for the PAC officers to Individual B.

47.     On or about July 31, 2013, BAKER thanked Individual B for having registered the PACs and establishing bank accounts for each.

48.     In or about November 2013, in the days prior to the first date that a judicial candidate could accept contributions, BAKER asked Individual B if Individual B, Individual B's spouse, and Individual B's law firm would each give $2,000 to Maggio's

-12-

campaign in return for an unspecified "bonus" from Company B.

49.     On or about November 21, 2013, the first date that a judicial candidate could accept contributions, BAKER caused Individual D, as Treasurer of Company B, to write three sequential checks, one to Individual B's law firm for $8,000 (deposited November 21, 2013), one to Individual C's consulting firm for $8,000 (deposited December 31, 2013), and one to Individual D's consulting firm for $8,500 (deposited November 22, 2013), falsely characterized as bonuses.

50.     On or about November 21, 2013, BAKER caused Individual D to issue a false invoice from his consulting and lobbying firm dated November 1, 2013, for $8,500 for "November/December Consulting Services" to Company B.

51.     On or about November 21, 2013, BAKER caused Individual B to issue a false invoice for Company B dated November 21, 2013, for "Legal Fees" in the amount of $8,000.

52.     On or about November 21, 2013, BAKER sent a text message to Individual B:   "Remember 3. 2k checks to Maggio for judge."'

53.     On or about November 22, 2013, BAKER organized a fundraiser for Individual E.    Prior to the fundraiser, BAKER changed the date on Individual A's twenty-four checks from "7-8-13," the date the checks were written, to "11-22-13," the second day a judicial candidate could receive campaign contributions.    BAKER gave Individual A's checks to Individual E's designated campaign representative at the fundraiser.

54.    On or about November 25, 2013, BAKER sent a text message to Individual B, stating, "When can I get the 6k of PAC checks and the 3 . . 2k checks from you for Maggio?"   BAKER instructed Individual B to mail the checks to BAKER at BAKER's home address.

55.    In or about December 2013, BAKER caused Individual B to write three checks to "Maggio for Judge," each in the amount of $2,000.   One of the checks was from Individual B, dated December 20, 2013, a second check was from Individual B's spouse, dated December 20, 2013, and a third check was from Individual B's law firm, dated December 3, 2013.

56.    On or about December 5, 2013, BAKER sent a text message to Individual B, stating he wanted $6,000 in PAC money for Maggio's campaign and Individual B's $6,000 donation to Maggio's campaign.   The text messaged stated:   "I'll be in lr. Later.   I need to get your check to you and pick up the 12k judge checks?   When.   Where."

57.    On or about December 9, 2013, BAKER caused Individual D to write three checks to "Mike Maggio for Judge" or "Maggio for Judge": a $2,000 check dated December 9, 2013, from Individual D's spouse; a $2,000 check dated December 9, 2013, from Individual D's consulting business; and a $2,000 check dated December 9, 2013, from Individual D.

58.    On or about December 20, 2013, BAKER sent a text message to Individual B, stating, "Need judge magio [sic] checks."

-14-

59.     Sometime in or about December 2013, BAKER asked Individual C to "max out" to Maggio "two three times," meaning donate $6,000 to Maggio's campaign divided in three $2,000 contributions.

60.     On or about December 20, 2013, BAKER sent a text message to Individual C, stating, "[Individual C's initials].Thanks for everything. Remember Maggio for judge."

61.     On or about December 23, 2013, BAKER caused Individual C to write three checks for Maggio's campaign – a $2,000 check from Individual C's spouse and two checks, each totaling $2,000, from Individual C's businesses.

62.     On or about December 26, 2013, BAKER sent a text message to Individual B, stating, "Need to connect on maggio checks today.   I'll be in llr [sic] today."

63.     On or about December 28, 2013, BAKER caused Individual C to issue an $8,000 invoice for "Consulting" services purportedly rendered on or about November 21, 2013 to Company B.

64.     On or about December 31, 2013, BAKER sent a text message to Individual B, which stated, "Urgent.   I need you to find 1k more from your PACs.   In any denomination. . 5.250.250.   Whatever.   Maggio for judge.   Dated today.   Thanks."

65.     Sometime between in or about November 2013 and January 2014, Maggio approached BAKER and asked BAKER about the rest of the $50,000 BAKER had promised Maggio.

66.     On or about January 4, 2014, BAKER sent a text message to Individual B,

stating in part, "Haven't received Maggio check."

67.    In or about January 2014, in response to Individual B's request that they discuss which candidates should receive funds from the eight PACs, BAKER instructed Individual B that the PAC funds were earmarked for Maggio.

68.    On or about January 23, 2014, BAKER sent an e-mail to Individual B, which directed Individual B to write checks totaling $7,000 from the eight PACs to Maggio's campaign.    BAKER also directed Individual B to write checks for other candidates from the eight PACs.

69.    On or about January 28, 2014, BAKER caused Individual B to write a $1,450 CIT PAC check (deposited February 7, 2014) to Maggio's campaign account.

70.    On or about January 28, 2014, BAKER caused Individual B to write a $1,000 CIT PAC check (deposited February 7, 2014) to Maggio's campaign account.

71.    On or about January 28, 2014, BAKER caused Individual B to write a $1,000 DBH2 PAC check (deposited February 7, 2014) to Maggio's campaign account.

72.    On or about January 28, 2014, BAKER caused Individual B to write a $250 GGG PAC check (deposited February 7, 2014) to Maggio's campaign account.

73.    On or about January 28, 2014, BAKER caused Individual B to write a $1,000 Judicial Reform PAC check (deposited February 7, 2014) to Maggio's campaign account.

74.    On or about January 28, 2014, BAKER caused Individual B to write a $1,000 Taxpayers for Change PAC check (deposited February 14, 2014) to Maggio's campaign

account.

75.     On or about January 28, 2014, BAKER caused Individual B to write a $250 TGI PAC check (deposited February 7, 2014) to Maggio's campaign account.

76.     Between in or about November 2013 and in or about February 2014, BAKER caused $12,950 in PAC checks to be contributed to Maggio's campaign, funded by the checks written by Individual A to the PACs on or about July 8, 2013.

77.     Between in or about November 2013 and in or about January 2014, BAKER caused $18,000 in straw donations to be contributed to Maggio's campaign, funded by the $24,500 in "bonuses" from Company B.

78.     In or about March 2014, when Individual A's contributions to the PACs became publicly known, Maggio deleted text messages between himself and BAKER.

79.     On or about June 4, 2014, Maggio provided a sworn statement to the Arkansas Ethics Commission.     This testimony contained false statements designed to conceal the purposes, manner and means of the conspiracy, including, among others:

        a.     When asked by the Ethics Commission, "Did you and Mr. BAKER discuss the pending lawsuit that . . . one of [Individual A's] nursing homes had in your court?" Maggio responded, "Never."

        b.     "[H]andling the nursing home lawsuit, we were all painfully aware that that needed to be a big roped-off area.   I didn't expect a dime from any nursing home."

80.     On or about June 5, 2014, BAKER provided a sworn statement to the

-17-

Arkansas Ethics Commission.   This testimony contained false statements designed to conceal the purposes, manner and means of the conspiracy, including, among others:

      a.    "I would not have asked [Individual A] for specific contributions to Maggio unless we were within the appropriate window."

      b.    "I can't remember specifically asking [Individual A] for money for these PACs."

      c.    "[T]hose are not my PACs . . . None of them are, are my PACs . . . I'm not on the PACs.   I'm not responsible for the PACs."

      d.    When asked by the Ethics Commission, "Were you helping [Individual A] buy a positive verdict from Judge Maggio," BAKER replied, "No ma'am. Didn't know anything about, really, how the verdicts worked or when they were whatever, no."

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### Bribery Concerning Programs Receiving Federal Funds
### (Violation of 18 U.S.C. § 666(a)(2))

81.    The allegations set forth in Paragraphs 1 through 80 are incorporated herein.

82.    In 2013, the State of Arkansas, Twentieth Judicial District received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance.

83.     From in or about May 2013 and continuing until in or about June 2014, in the Eastern District of Arkansas and elsewhere, the defendant,

GILBERT R. BAKER,

did knowingly and corruptly give, offer, and agree to give, anything of value to Michael A. Maggio, an agent of the government of the State of Arkansas, Twentieth Judicial District, a part of the judicial branch of the State of Arkansas, intending to influence and reward Maggio in connection with a business, transaction, or series of transactions of $5,000 or more of the State of Arkansas, Twentieth Judicial District, a part of the judicial branch of the State of Arkansas, in violation of 18 U.S.C. § 666(a)(2);

All in violation of Title 18, United States Code, Section 666(a)(2).

## COUNTS THREE through NINE
### Honest Services Wire Fraud
### (Violation of 18 U.S.C. §§ 1343, 1346)

84.     The allegations set forth in Paragraphs 1 through 80 are incorporated herein.

85.     From in or about May 2013 and continuing until in or about June 2014, in the Eastern District of Arkansas, and elsewhere, the defendant,

GILBERT R. BAKER,

Michael A. Maggio, and at least one other person, with intent to defraud, voluntarily and intentionally devised and intended to devise a scheme and artifice to defraud and deprive the citizens of the State of Arkansas and the Twentieth Judicial District of their right to the

honest services of Maggio, as a circuit judge for the State of Arkansas, Twentieth Judicial District, through bribery.

86.     Between in or about May 2013 and continuing until in or about June 2014, in the Eastern District of Arkansas and elsewhere, BAKER, Maggio, and at least one other person, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communications in interstate commerce, the following writings, signals, and sounds:

| Count | Date | Wire Transaction |
|-------|------|------------------|
| THREE | 02/07/2014 | $1,450 CIT PAC check dated 01/28/2014 from Account No. XXX927 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |
| FOUR | 02/07/2014 | $1,000 CPI PAC check dated 01/28/2014 from Account No. XXX919 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |
| FIVE | 02/07/2014 | $1,000 DBH2 PAC check dated 01/28/2014 from Account No. XXX900 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |
| SIX | 02/07/2014 | $250 GGG PAC check dated 01/28/2014 from Account No. XXX943 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |
| SEVEN | 02/07/2014 | $1,000 Judicial Reform PAC check dated 01/28/2014 from Account No. XXX928 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |
| EIGHT | 02/14/2014 | $1,000 Taxpayers for Change PAC check dated 01/28/2014 from Account No. XXX986 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |

| NINE | 02/07/2014 | $250 TGI PAC check dated 01/28/2014 from Account No. XXX935 at Delta Trust and Bank deposited into Account No. XXX168 at First Service Bank. |
|------|------------|------------------------------------------------------------|

All in violation of Title 18, United States Code, Sections 1343 and 1346.