IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:19CR00031 DPM |
| | ) | |
| GILBERT R. BAKER | ) | |

**MOTION TO DISMISS THE INDICTMENT FOR PREINDICTMENT DELAY**

Through his attorneys, J. Blake Hendrix and Annie Depper of Fuqua Campbell, P.A., Baker moves to dismiss the indictment under the Fifth Amendment's Due Process Clause for delay in bringing the indictment.

**I.      Background**

Baker is charged in a nine-count indictment with conspiracy to commit federal program bribery and honest services wire fraud in violation of 18 U.S.C. §371; one count of federal program bribery in violation of 18 U.S.C. §666(a)(2); and, seven counts of honest services wire fraud in violation of 18 U.S.C. §§1343 and 1346. The indictment alleges that each of the charges was committed between May 2013 and June 2014. The indictment was not filed until January 10, 2019.

The indictment alleges that Baker and Michael Morton bribed Michael Maggio, a state court judge, with campaign contributions during Maggio's run for the Arkansas Court of Appeals in exchange for Maggio reducing a jury award against one of Morton's nursing homes. For purposes of this motion, the relevant chronology is the following: in February 2012, Maggio, sitting as a circuit court judge, was assigned to preside over a civil lawsuit involving one of Morton's nursing homes (Indictment ¶5); in early 2013, Baker agreed to help raise funds for Maggio's campaign for the Court of Appeals (Indictment ¶18); on May 16, 2013, the jury

1

returned a $5.2 million verdict against the nursing home (Indictment ¶5); in May and June 2013, Baker met with Morton to discuss donations to various candidates and causes (Indictment ¶¶21, 26); in late June or early July 2013, Baker and a lawyer began forming Political Action Committees (PAC's) for the benefit of numerous candidates (Indictment ¶¶24, 25); on July 8, 2013, Baker received contributions from Morton (Indictment ¶37);[1] on July 10, 2013, Maggio denied the nursing home's motion for a new trial, but granted its motion for remittitur and reduced the award from $5.2 million to $1 million (Indictment ¶41); and, after receiving campaign contributions for the PAC's and from individuals, Baker gave campaign contributions to Maggio's campaign, which deposited the money in the campaign account on February 7 and 14, 2014 (Indictment ¶86).

Central to the government's theory of prosecution are communications between 1) Baker and Morton and 2) Baker and Maggio. The indictment alleges that on May 16, 2013, a half hour after the jury's verdict in the civil case, Maggio and Baker engaged in three text communications and Morton called Baker (Indictment ¶22). On May 17, 2013, the day after the verdict, Morton and Baker exchanged phone calls (Indictment ¶23). On June 17, 2013, sometime after Baker and Morton met to discuss contributions to various candidates and causes, Morton tried to call Baker twice and Baker and Maggio engaged in eight text communications (Indictment ¶27). On July 8, 2013, two days before Maggio reduced the jury award, Baker and Maggio engaged in four text communications (Indictment ¶35). On July 9, 2013, the day before the remittitur, Baker and Maggio spoke on the phone, Baker and Morton spoke on the phone, and Baker and "Individual E" (a candidate for the Arkansas Supreme Court) texted twice (Indictment ¶39).

---

[1] The contributions included funds for a pro-tort reform company, a charitable contribution to a university, and a campaign contribution for an Arkansas Supreme Court Justice's campaign.

The indictment implies that the communications are evidence of Baker, Morton, and Maggio conspiring to reduce the jury award in exchange for contributions to Maggio's Court of Appeals campaign. The indictment, however, does not set out the content of the text messages. Had the government acted timely, the content of the text messages could have been retrieved. If they had been retrieved, they would have showed that Baker, Morton, and Maggio never discussed Maggio reducing the jury award in exchange for campaign contributions. The government, however, waited four years and eight months from the last act alleged (just a few months before the statute of limitations expired) before bringing the indictment against Baker. Because of this delay, Baker has been denied access to the exculpatory text messages.

**II.    Preindictment Delay**

The Fifth Amendment's Due Process Clause protects a defendant against unreasonable preindictment delay. *United States v. Davis*, 690 F.3d 912, 921 (8th Cir. 2012), citing *United States v. Gladney*, 474 F.3d 1027, 1030 (8th Cir. 2007). To establish a violation, the defendant must prove (1) the delay resulted in actual and substantial prejudice to the presentation of the defense; and (2) the government intentionally delayed bringing the indictment either to gain a tactical advantage or to harass the defendant. *Id.* To satisfy this burden, the defendant must identify specific witnesses or documents lost during the delay and the information they would have provided. *United States v. Jackson*, 446 F.3d 847, 851 (8th Cir. 2006). Further, the defendant must show that the missing testimony or information is not available through other sources. Alleged prejudice is insufficient to establish a due process violation if it is insubstantial, speculative, or premature. *Id.*

If the defendant fails to establish actual prejudice, the court need not address the second factor: intentional delay to gain a tactical advantage or harassment. *Id.* The Circuit Courts of

Appeal, however, are unsettled on the allocation of the burden of proof. In *United States v. Lerch*, 996 F.2d 158 (7th Cir. 1993), a panel of the Seventh Circuit noted that the Circuit recognized two different standards: under one, the defendant must prove actual prejudice and, if he does, the burden shifts to the government to show the reason for the delay; under the other, the defendant is responsible for proving both prejudice and improper motive. *Id.* at 163. (The Court did not decide which standard apples, finding that the defendant failed to establish actual prejudice. *Id.*). It doesn't appear the Eighth Circuit has settled the issue, but some language supports the proposition that the burden shifts to the government if the defendant shows actual prejudice. *See United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000) ("The court will inquire into the reasons for the delay only where actual prejudice has been established.").

A.      **Actual Prejudice**

This case started garnering substantial press and investigation before March 2014. On March 14, 2014, the Arkansas Democrat-Gazette began publishing a long-running series of articles implying a connection between the campaign contributions and Maggio's order reducing the jury verdict. See *https://www.arkansasonline.com/news/2014/mar/14/pacs-emerged-judge-cut-award-20140314*. By March 27, 2014, the Arkansas Ethics Commission opened an investigation. The government, however, delayed in obtaining the content of the text messages that the indictment implies were conspiratorial communications between Baker and Maggio, and Baker and Morton, to fix the nursing home case.

Baker suffered substantial prejudice by the government's failure to obtain the content of the text messages, and we have no way of getting them now (or even when the indictment was filed). The prejudice is apparent and substantial: the indictment makes a clear point of implying that the text messages were about Maggio, Baker, and Morton discussing an agreement for

4

Maggio to receive campaign contributions in exchange for Maggio reducing the jury award. They were not. At no time did Baker, Maggio, or Morton discuss a *quid pro quo*. That is, no one ever discussed that Morton would contribute to Maggio's campaign in exchange for any benefit, much less the specific benefit of reducing the jury award against Morton's nursing home.

The conversations on May 16 and 17, 2013, after the jury verdict, were about the verdict and, in light of the surprisingly large size of the verdict, the general need for tort reform, a platform that all three men agreed with. The communications on June 17, 2013, were about campaign financing. Remember, Baker had agreed to raise funds for Maggio's campaign, and, like anyone running for office, Maggio wanted to know the status of Baker's fundraising efforts. The conversations on July 8 and 9, 2013, were about the same subject. Notably, the indictment alleges in paragraph 39 that Baker and "Individual E" were texting the day before Maggio reduced the jury award. Individual E was a candidate for the Arkansas Supreme Court, and Baker was helping her, like he did for many others, raise money for her campaign. The government does not allege she was somehow a member of a bribery conspiracy to rig Morton's nursing home case. And it can't: Baker was also raising campaign contributions for Individual E, and the texts between her and Baker, like the texts between Baker and Maggio, were about Baker's efforts to raise campaign funds.

There were no communications between Morton and Maggio. The communications between Morton and Baker were about soliciting campaign contributions for various candidates and charities and about the need for tort reform. The communications between Baker and Maggio, like the communications between Baker and Individual E, were about Baker's efforts to raise campaign contributions for their respective campaigns. Contrary to the implication in the indictment that these conversations must have been about giving campaign money for fixing a

5

case, there was never any mention of a *quid pro quo* -- the giving of campaign contributions for the remittitur order reducing the jury award. In fact, Baker (like most lay persons) had no idea what a remittitur was or that a judge could reduce a jury award. He couldn't have been talking about something he didn't know even existed. Had the government not delayed, it could have obtained these exculpatory communications. Baker is now prejudiced by that delay.

For these reasons, Baker moves the Court to find the delay in bringing this prosecution caused Baker substantial prejudice and to inquire of the government the reasons for the delay.

Respectfully submitted by,


J. Blake Hendrix
Arkansas Bar No. 86066
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)
bhendrix@fc-lawyers.com

Annie Depper
Arkansas Bar No. 2009267
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7144 (direct dial)
adepper@fc-lawyers.com